Clara B. MARTIN, Administrator of the Estate of Dolores Jane Martin, Deceased, Appellant,

v.

Robert E. HEDDINGER, d/b/a Bob's Tap, Appellee.

No. 84–1139.

Supreme Court of Iowa.

Aug. 21, 1985.

Patrick J. Spellman and Martin E. Spellman of Spellman, Spellman, Spellman, Spellman & Kealhofer, Perry, for appellant.

Hayward L. Draper of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellee.

HARRIS, Justice.

Dolores Jane Martin, plaintiff's decedent, lost her life in a one-vehicle pickup truck accident. The pickup was being driven by Gale Armstrong who was or became intoxicated while being served beer or intoxicating liquor in defendant's tavern. The administrator of Dolores' estate brought this wrongful death action. Trial was to a jury which returned a verdict for defendant dramshop operator. On appeal, plaintiff assigns error in a number of the instructions. We find merit in one of the assignments and reverse the case and remand it for a new trial.

At the time in question Dolores was an eighteen-year old freshman, attending college in Missouri. At college she met and

began dating Steve Morrell and, in October 1981, came with him to meet his family at Van Meter, Iowa. During the late afternoon and evening the young couple were to visit a number of bars in the area. Not counting a stop at a convenience store for beer, the defendant's bar, Bob's Tap in Waukee, was the fifth such establishment they visited.

At the first tavern they were joined by one of Steve's friends. Gale Armstrong, a second of Steve's friends, met and joined the group at the second bar. The testimony conflicts on whether all four drank at the bars but there is testimony that, with one exception, they all did. The exception is at the last bar, where Dolores was not served because she did not produce an identification card on request. She had not reached Iowa's legal drinking age.

When they left defendant's bar Armstrong was going to drive Steve and Dolores from Waukee back to Van Meter. On the way there the accident occurred in which Dolores was killed. It was stipulated that Armstrong was drunk while in defendant's bar in Waukee.

In view of the stipulation and the liability imposed on dramshop operators by Iowa Code section 123.92 (1983), defendant's trial strategy was entirely defensive. The defense was based on evidence of assumption of risk and complicity. The trial court's instructions on these matters are the targets of plaintiff's assignments of error.

I. Plaintiff's first contention invites us to infuse into the assumption of risk and complicity defenses the general philosophy of our majority holding in *Goetzman v. Wichern,* 327 N.W.2d 742, 754 (Iowa 1983) (contributory negligence defense "is supplanted by the doctrine of comparative negligence"). Plaintiff argued at trial and urges on appeal that any complicity or assumption of risk on the part of Dolores should only work to reduce, rather than to bar, recovery. A jury instruction was challenged on this basis.

█ At first blush our abandonment of the doctrine of contributory negligence

would seem unrelated to a dramshop case. Contributory negligence is not a defense to a dramshop case in Iowa. *Williams v. Klemesrud,* 197 N.W.2d 614, 617 (Iowa 1972). In *Berge v. Harris,* 170 N.W.2d 621, 624–27 (Iowa 1969), we discussed why assumption of risk is a defense to a dramshop claim while at the same time contributory negligence is not. We noted that complicity is also a defense in dramshop actions. *Id.* at 626, 629. Plaintiff nevertheless suggests three reasons why *Goetzman* has modified defenses in dramshop cases.

A. She first argues that, to allow complicity and assumption of risk to operate as complete bars, is unfair in the same sense that contributory negligence was condemned as unfair in *Goetzman.* The argument overlooks the aim of the dramshop statute, which is not a matter of securing fairness for drinking persons. The statute is instead:

> "designed to fulfill a need for discipline in the traffic of liquor and to provide a remedy for evils and dangers which flow from such traffic." [Authority.] The evil and danger we are concerned with here is that a person in an intoxicated condition might unintentionally, but as a result of his intoxication, injure some other party. We do not believe it contributes to the fulfillment of this purpose if the injured party is given no responsibility for his own welfare.

*Berge,* 170 N.W.2d at 626.

█ *Berge* and the authorities it relies on make it clear that the dramshop act is meant to protect only those who have not participated in the intoxicated person's intoxication by their complicity or assumption of risk. The "fairness" concept embraced in *Goetzman* is defined in terms of proportional fault. The dramshop statute, on the other hand, chooses a class of people who shall receive protection under the act.

B. We have, after *Goetzman,* refused to apply comparative fault to strict liability in tort. *See Speck v. Unit Handling Division, Litton Systems, Inc.,* 366 N.W.2d 543, 545 (Iowa 1985). Upon the same rea-

soning we refuse to apply the *Goetzman* principles to dramshop cases. Of course we have no occasion here to consider Iowa Code section 668.1 (1985) (comparative fault) because it was made effective after this case arose.

C. Finally plaintiff seeks to invoke *Goetzman* on the ground that the two defenses, complicity and assumption of risk, are nothing more than forms of contributory negligence. This being true, the argument goes, the two defenses should be treated in the same manner that *Goetzman* treated contributory negligence. In considering the contention it is necessary to recite the elementary definitions of the three terms that are involved.

"Contributory negligence", in the classical sense, is "conduct on the part of plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection." *Prosser and Keeton on Torts*, § 65 at 451 (5th ed. 1984). "Assumption of risk" is considered here in its secondary meaning which defines situations "where the injured person acted unreasonably in assuming a particular risk ...." *Rosenau v. City of Estherville*, 199 N.W.2d 125, 131 (Iowa 1972)[1]; *see also Prosser and Keeton, supra*, § 68 at p. 480.

"Assumption of risk" is not based on plaintiff's fault or negligent conduct, but is instead:

quite narrowly confined and restricted by two or three elements or requirements: first, the plaintiff must know that the risk is present, and he must further understand its nature; and second, his choice to incur it must be free and voluntary.

*Id.* at 486–87.

Complicity, as a defense in tort actions involving intoxication, is based on the plain-

tiff's involvement in the claimed wrong. We have said:

[A] party who participates in the drinking activities during which the injuring party becomes intoxicated cannot recover under the dramshop act for injuries sustained as a result of such intoxication. [Authorities.]

Two reasons for the rule expressed in the cases are that one cannot profit from his own wrong and a person who participates in the drinking activities is not an innocent person entitled to protection under the dramshop act.

*Berge v. Harris*, 170 N.W.2d at 625.

■ There is a certain relationship between the two dramshop defenses and contributory negligence. But this is a far cry from saying the terms are interchangeable, or even that in general they mean the same thing. We find no merit in plaintiff's contention.

■ The trial court did not err in rejecting plaintiff's contention that *Goetzman's* comparative fault concepts apply to the defenses of complicity and assumption of risk in dramshop cases.

II. For her second assignment, plaintiff argues it was duplicitous to submit both the complicity and assumption of risk defenses. The contention is based only in part upon the *Goetzman* comparative fault argument we have already rejected. Plaintiff points out that the evidence was the same for both submitted defenses. She cites two opinions in her contention that the two defenses mean essentially the same thing. *Herrly v. Muzik*, 355 N.W.2d 452, 454 (Minn.App.1984) ("the legal reason for denying recovery to one in complicity is that the person has assumed the risk"); *Nelson v. Araiza*, 69 Ill.2d 534, 14 Ill.Dec.

---

1. In its "primary meaning" assumption of risk means only that the "defendant was not negligent, i.e., either owed no duty or did not breach the duty owed." *Rosenau*, 199 N.W.2d at 131. The question here does not implicate the primary meaning of the term.

In *Rosenau*, 199 N.W.2d at 133, we abolished "assumption of risk as a separate defense in all

cases in which contributory negligence is ... available as a defense." This abolition is of no importance here because, as we have pointed out, contributory negligence is *not* available as a defense to a dramshop case. *Williams v. Klemesrud*, 197 N.W.2d at 617.

441, .445, 372 N.E.2d 637, 641 (1977) (complicity is "at best ... a form of the archaic and obsolete doctrine of assumption of risk in negligence cases").

■■ We have however said that the theories of the two defenses differ. One is a matter of knowing assent. The other is a matter of involvement. It is true that some, perhaps most, of the evidence here relates to both defenses. But where the same evidence supports two material theories of law the jury should be instructed on both.

We reject the assignment because the premise on which it is based is unsound.

III. Plaintiff also challenges the wording of each of the two special defense instructions. We think both criticisms are well taken.

The assumption of risk instruction was challenged because it imposed an objective, rather than a subjective standard. The challenged instruction informed the jury:

> [I]f you find the defendant has established by a preponderance of the evidence that Dolores Jane Martin, at any time before she entered the pickup truck upon leaving Bob's Tap in Waukee had knowledge that Gale Armstrong was intoxicated, *or ought to have known that Gale Armstrong was intoxicated based on her knowledge of what he had to drink that evening,* and she made no attempt to obtain another ride or have someone else drive, then the plaintiff cannot recover anything from the defendant and you should enter a verdict for the defendant.

(Emphasis added.)

■■ Assumption of risk, unlike contributory negligence, proceeds from the injured person's actual awareness of the risk. The standard is subjective, not objective. *Prosser* states:

> Thus, assumption of risk is governed by the subjective standard of the plaintiff himself, whereas contributory negligence

is measured by the objective standard of the reasonable man.

*Prosser and Keeton on Torts,* § 68 at 495.

We have said that assumption of risk is a matter of whether the plaintiff knew of the risk, not whether the plaintiff should have known of it. *Bohnsack v. Driftmier,* 243 Iowa 383, 390, 52 N.W.2d 79, 83 (1952) (reversible error to instruct that one voluntarily becomes guest of intoxicated driver where the person "should have known" of intoxication). *See also King v. Barrett,* 185 N.W.2d 210, 213 (Iowa 1971) ("plaintiff must be aware of ... intoxication and of the danger to himself from it").

We also agree with plaintiff's challenge to the complicity instruction. Plaintiff would have it read as follows:

> If you find that Dolores Jane Martin purchased or caused to be purchased beer or intoxicating liquor for the said Gale W. Armstrong or encouraged or *voluntarily* participated *to a material and substantial extent* in the drinking of beer or intoxicating liquor by the said Gale W. Armstrong and as a result thereof the said Gale W. Armstrong became intoxicated and injured the plaintiff, then her estate cannot recover against the defendant.

■■ At trial plaintiff unsuccessfully urged the court to expand the definition of the participation necessary for her complicity by adding the language emphasized in the excerpt from the instruction last above quoted. Because we have found reversible error in the assumption of risk instruction it is unnecessary to decide whether the omission of the language requested for the complicity instruction was also reversible error. It is enough here to say the language should have been included.

■■ Participation is a relative term and, in order for it to amount to complicity, it should be more than passive. Authorities from other states are in accord. *Parsons v. Veterans of Foreign Wars Post 6372,* 86 Ill.App.3d 515, 41 Ill.Dec. 722, 724, 408 N.E.2d 68, 70 (1980) (complicity existed where plaintiff "voluntarily participated to

a material and substantial extent in the drinking which led to the intoxication"); *Heveron v. Village of Belgrade,* 288 Minn. 395, 181 N.W.2d 692, 695 (1970) (recovery barred only to those who "voluntarily and affirmatively" participated in the activity leading to intoxication); *Dahn v. Sheets,* 104 Mich.App. 584, 305 N.W.2d 547, 550 (1981) (participation was not shown to be sufficiently active by evidence "only tending to show that plaintiff drank with intoxicated driver").

 The instruction should have included the rejected language in order to exclude incidental or casual conduct from the definition of participation.

Plaintiff raises other contentions which we have considered and reject. They are not likely to recur on retrial. To discuss them would unduly extend this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

All Justices concur except REYNOLDSON, C.J., and LARSON, J., who concur in result.