Karen K. WADLE, Appellant,

v.

Frank W. JONES and City of Des Moines, Iowa, Appellees.

No. 64422.

Supreme Court of Iowa.

Nov. 25, 1981.

Robert C. Dopf of Binford & Dopf, P. C.,
Des Moines, for appellant.

Donald C. Hohnbaum and Alan M. Pape of Christianson, Hohnbaum & George, Des Moines, for appellee Jones.

J. M. Sullivan, City of Des Moines, Iowa, Asst. City Atty., for appellee City of Des Moines.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

SCHULTZ, Justice.

The principal question raised on this appeal from a judgment awarding damages for personal injuries is whether we should retain the *pro tanto* credit rule. The trial court applied this rule, allowing a dollar-for-dollar credit against plaintiff's recovery for consideration received from other joint tortfeasors under a settlement agreement. The other issues raised concern opinion testimony by a lay witness, a proposed jury instruction, and a contribution award. We find no merit in any of the parties' assignments of error and affirm the judgment of the trial court.

At approximately 2:00 a. m. on January 18, 1978, plaintiff, Karen K. Wadle, was injured when the Volkswagen automobile in which she was a passenger was involved in a collision with a pickup truck driven by defendant Frank W. Jones at the intersection of Fleur Drive and Southlawn Drive in Des Moines. When the accident occurred, the vehicle in which Wadle was riding was proceeding northbound on Fleur through the intersection and Jones was making a left turn from the southbound turn lane of Fleur onto Southlawn.

Wadle brought a suit against Jones and defendant City of Des Moines. Her petition alleged that Jones was negligent in the operation of his vehicle, and that the City negligently allowed snow to be piled on the median of the intersection where the accident occurred, which obstructed the vision of southbound motorists. Wadle subsequently amended her petition to bring in as an additional defendant Jones's employer, Sedalia-Marshall-Boonville State Lines, Inc. (SMB), on a vicarious liability claim, alleging that at the time of the accident Jones was acting within the scope of his employment.

Prior to trial, Wadle entered into a settlement agreement with Jones and SMB. Under the terms of the agreement, Wadle received $45,000 in exchange for a covenant not to sue and dismissal of the suit with prejudice with respect to Jones and SMB. Jones remained in the action, however, on the basis of his cross-petition against the City for indemnity, which was later amended to add an alternative claim for contribution from the City.

Upon learning of the settlement, the City amended its answer, claiming a credit of $45,000 on any judgment that might be rendered against it at trial. After a pretrial conference, the trial court issued an order declaring that the City was entitled to such a credit. The case proceeded to trial, and the jury returned a verdict of $45,125.59 against the City. The trial court deducted the $45,000 credit and entered a judgment in favor of Wadle against the City for $125.59. The court also determined that the jury's verdict established that Jones and the City were concurrently negligent in causing Wadle's injuries and entered a judgment in favor of Jones for $22,500 (fifty percent of the settlement paid by him) against the City for contribution.

Wadle appeals, claiming the trial court erred in granting the City a credit for the entire amount of the settlement. The City cross-appeals, alleging error by the trial court in: (1) sustaining objections to opinion testimony by a lay witness; (2) refusing to submit a proposed instruction to the jury; and (3) awarding contribution to Jones.

■ I. *Settlement credit.* In *Greiner v. Hicks*, 231 Iowa 141, 300 N.W. 727 (1941), this court adopted the *pro tanto* credit rule that was applied by the trial court. The rule dictates that consideration received from a joint tortfeasor reduces *pro tanto* (to that extent) any recovery against the other tortfeasors. *Id.* at 146–47, 300 N.W. at 731. Wadle contends that the *pro tanto* credit rule is an unfair and antiquated common-

law doctrine; she asks us to reexamine *Greiner* and reject the *pro tanto* credit rule. She submits two alternative methods of allowing credit against recovery: (1) that we adopt the result reached by the New Jersey Supreme Court in *Theobald v. Angelos*, 44 N.J. 228, 208 A.2d 129 (1965), in which the *pro tanto* rule was rejected in favor of a pro rata credit; or (2) that a hearing be conducted to determine what portion of the settlement was intended by the parties to be compensation for damages and what portion was paid by the settling tortfeasors to purchase "peace" (*e. g.*, to place a limit on the tortfeasor's liability, to avoid litigation expense, *etc.*), and that only the portion that was intended by the settling parties to be compensation for damages be applied as a credit against the recovery. Although some of the arguments advanced in support of these theories overlap, we will discuss them separately.

■ *A. Pro rata credit.* The pro rata credit rule provides that when a claimant settles with one of several joint tortfeasors the nonsettling joint tortfeasors are entitled to a credit against any verdict rendered against them in the amount of the settling joint tortfeasor's proportionate or pro rata share of the verdict. The credit is applied regardless of whether the consideration received by the claimant under the settlement agreement is more than or less than the settling joint tortfeasor's pro rata share of the verdict. *Theobald*, 44 N.J. at 241, 208 A.2d at 136. In this case the City would be entitled to a credit of fifty percent of the verdict (Jones's pro rata share)[1] or $22,-562.80. The result would be to increase Wadle's recovery by $22,437.20 to $67,-562.79.

Wadle maintains that application of the pro rata rather than the *pro tanto* credit rule is warranted by considerations of fairness. She claims that she has in effect sold a portion of her cause of action to Jones. It is her contention that if she had settled for less than Jones's pro rata share of the verdict, or if Jones had been found solely liable and she had settled for less than what her recovery should have been, she would have to bear the burden of a poor settlement. She claims that since she settled for more than Jones's pro rata share of the verdict she should have the benefit of a good settlement.

■ We believe that it would be unfair to apply the pro rata credit rule in the instant case. Wadle complains about a rule she knew or should have known to be in existence when she negotiated the settlement agreement with Jones. To abrogate the *pro tanto* rule in favor of a pro rata rule in this case would provide Wadle with a windfall at the expense of Jones who, as Wadle concedes, would lose his right of contribution against the City. In the settlement agreement entered into by Jones, SMB, and Wadle, Jones's right of contribution against the City was expressly reserved. Accordingly, we think it would be unfair to adopt the pro rata credit rule in this case and deprive Jones of his right of contribution.

■ Aside from the equities of the case at hand, we believe fairness dictates that we retain the *pro tanto* credit rule. In *Greiner*, after determining that the decided weight of authority followed the *pro tanto* credit rule, we stated: "The theory underlying these decisions is that while a party is entitled to full compensation for his injuries there can only be one satisfaction therefor. This court has repeatedly recognized the universal rule that there can be but one satisfaction for an injury." 231 Iowa at 146–47, 300 N.W. at 731. Adoption of the pro rata credit rule would allow a claimant who has made a settlement that exceeds the settling tortfeasor's pro rata share of the verdict to recover more than full compensation for personal injuries.

In the present case, for example, the jury was instructed to disregard the settlement and return a verdict for the full amount of

---

1. Since SMB is involved in this action solely on the basis of vicarious liability, which is imputed from Jones, SMB and Jones are considered together for purposes of contribution. *Schnebly v. Baker*, 217 N.W.2d 708, 731 (Iowa 1974) (*Schnebly I*).

damages, if any, proven by Wadle. The jury returned a verdict of $45,125.59. Application of the pro rata credit rule would allow Wadle to recover $67,562.79, $22,437.20 in excess of the amount the jury found her rightfully entitled to.

■ All payments *in settlement* of a suit, including amounts that might be attributable to buying "peace," fall under the rule preventing unjust enrichment by double recovery. That is not to say that a claimant may never receive consideration for personal injuries in excess of the amount of damages determined by the trier of fact, however. Payments "in the nature of gratuity or arising from contract, need not be applied in diminution of damages." *Id.* at 147, 300 N.W. at 731.

We have frequently expressed our disdain for double recoveries, and we are not disposed to retreat from this rule today. Accordingly, we refrain from abrogating the *pro tanto* credit rule in favor of the pro rata approach advocated by Wadle.

Wadle nevertheless contends that this court implicitly adopted the pro rata credit rule she advocates in *Schnebly v. Baker*, 221 N.W.2d 739 (Iowa 1974) (*Schnebly II*) (per curiam). In that case the plaintiff entered into a $150,000 settlement with tortfeasors subsequently found liable for contribution of fifty percent of a $912,124 judgment against a joint tortfeasor. Under the terms of the settlement, the plaintiff agreed to indemnify the settling tortfeasor for any contribution awarded to the defendant. *Id.* at 739; *Schnebly v. Baker*, 217 N.W.2d 708, 731–32 (Iowa 1974) (*Schnebly I*). We reduced the plaintiff's judgment by the amount of contribution owed by the settling tortfeasors to the defendant. 221 N.W.2d at 740. Thus, there was no pro rata discharge; we merely ordered the contribution award to be satisfied in the most direct manner possible—by deducting it from the judgment.

■ *B. Restriction of credit to "damage" portion of settlement.* Wadle claims that a portion of consideration paid for a covenant not to sue is paid to purchase the tortfeasor's peace and may not properly be attributed to damages. She argues that the *pro tanto* credit rule does not give recognition to this portion of a settlement and that the rule is archaic and not in accordance with modern contract law because it does not allow inquiry into the intention of the parties. In support of her position, she cites *Community School District v. Gordon N. Peterson, Inc.*, 176 N.W.2d 169 (Iowa 1970), in which, she maintains, this court abandoned the common law's artificial and mechanical treatment of releases.

In the *Peterson* case we overruled the existing common-law rule under which a release of one joint tortfeasor automatically discharged the liability of the other joint tortfeasors and held that the intention of the parties is controlling. *Id.* at 175. Wadle maintains that automatic application of the *pro tanto* credit rule should likewise be abolished and the intention of the settling parties should determine what portion of the settlement is to be treated as damages. We disagree. While *Peterson* does illustrate this court's sensitivity to antiquated common-law doctrine, it is not instructive on the precise issue presented in this appeal. Furthermore, in that case we reiterated the theory underlying the *pro tanto* credit rule: "No double recovery will be tolerated." *Id.*

We also find no merit in Wadle's assertion that the *pro tanto* credit rule is archaic. The rule is supported by Restatement (Second) of Torts § 885(3) (1979), which was approved by the American Law Institute in 1977. Section 885(3) provides:

A payment by any person made in compensation of a claim for harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least *to the extent of the payment made*, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.

(Emphasis added).

We find no merit in any of Wadle's contentions. Accordingly, we uphold the validity of the *Greiner pro tanto* credit rule.

**C.** *Pleading and Proof of Credit.* Wadle also claims that the City failed to properly plead and prove its entitlement to a credit. Specifically, she contends that the City was obligated to plead and prove that Jones was a tortfeasor. There is no merit in this contention. The City claimed entitlement to a credit in its amended answer. A finding that a settling party was in fact a joint tortfeasor and actually liable to the plaintiff is not necessary; it is sufficient if it appears that the plaintiff could have sued the settling party. *Greiner*, 231 Iowa at 147, 300 N.W.2d at 731; Restatement (Second) of Torts § 885(3). In any event, the trial court expressly found that Jones and the City were concurrently negligent. This finding has not been challenged on appeal.

II. *Opinion testimony by a lay witness.* On the afternoon following the accident, several City employees reconstructed the accident at the scene and took photographs. When one of these employees, who worked for the City's streets department, was called as a witness at trial, he testified that he drove a pickup truck in the same direction that Jones had driven and approached the intersection. The witness was then asked whether, from a specific point, there was "sufficient visibility to make a turn and have sufficient time to avoid an accident," and "what the visibility was like for a person making a turn." He was also asked to "describe the amount of visibility [he] had with respect to making a turn."

Objections were interposed that, *inter alia*, an adequate foundation had not been laid, and that the questions called for improper opinion evidence. The trial court sustained these objections. The City contends the trial court erred in so doing. There is no merit in this contention.

A lay witness may give opinion testimony as to the cause of events if the witness has observed the facts and has acquired sufficient special knowledge to form an opinion that can be expected to be reliable and trustworthy. *Meeker v. City of Clinton*, 259 N.W.2d 822, 830–31 (Iowa 1977); *Ruby v. Easton*, 207 N.W.2d 10, 20 (Iowa 1973). However, it is well established that the receipt of opinion testimony, lay or expert, rests largely in the sound discretion of the trial court, and absent abuse of that discretion to the prejudice of the complaining party, this court will not reverse the trial court's ruling. *In re O'Neal*, 303 N.W.2d 414, 420 (Iowa 1981); *Ganrud v. Smith*, 206 N.W.2d 311, 314–15 (Iowa 1973).

The accident at issue happened when it was dark, at approximately 2:00 a. m. The witness' observations occurred during daylight that afternoon. Photographs taken by investigating officers after the accident and pictures taken by the City when the accident was reconstructed, which were introduced into evidence as exhibits, reflect an obvious difference in visibility at these times. Also, the City did not show that the weather, street, and traffic conditions at the time of the witness' observations were the same as those at the time of the accident. In addition, the point from which the witness was asked to describe visibility was a point at which a photograph was taken from the pickup. The vehicle was stationary at the time, and the photograph reveals that it had proceeded from the southbound turning lane to a point very near and possibly even partially in the inside northbound lane of Fleur Drive.

The trial court could have determined that the lay witness' special knowledge was gained through observation of circumstances dissimilar to those existing at the time of the accident. *See* McCormick, *Opinion Evidence in Iowa*, 19 Drake L.Rev. 245, 252 (1970) (lay witness' opinions must be based on special knowledge gained through "common observation of specific events or conditions"). The court therefore could have concluded that the testimony would confuse rather then assist the jury. Accordingly, we find no abuse of discretion on the part of the trial court.

III. *Lookout instruction.* At trial Jones testified that when he got to the intersection where the accident occurred he stopped and could not see any oncoming

traffic because his vision was obstructed by the snowpile on the median in front of him. He checked to see if there was any glare on the pavement from headlights and finding none elected to pull out and turn left. The City submitted a proposed instruction on lookout, which provided in part: "The duty to maintain a proper lookout includes the duty to stop if the driver has lost visibility entirely." This portion of the instruction is based on *Coulthard v. Keenan*, 256 Iowa 890, 896, 129 N.W.2d 597, 600–01 (1964). The trial court instructed the jury that the City claimed Jones failed to maintain a proper lookout and defined lookout as "that watchfulness that would be maintained by an ordinary reasonable and prudent person under the same or similar circumstances." The City contends the court erred in failing to instruct the jury on the principle of law contained in the above-quoted portion of its proposed instruction. We disagree.

The trial court instructed the jury that Jones had admitted negligence in failing to yield the right of way. By this admission Jones's negligence was established as a matter of law; there remained no issue as to whether he complied with the duty to maintain a proper lookout. The ultimate issues for the jury's resolution were whether the City was also negligent, and, if so, whether its negligence was a proximate cause of the accident. Because the City's requested instruction was not related to the factual issues to be decided, the trial court was not required to submit it to the jury, even though it may have been a correct statement of the law. *See Wilson v. Jefferson Transportation Co.*, 163 N.W.2d 367, 372 (Iowa 1968); *Lolkus v. Vander Wilt*, 258 Iowa 1074, 1086, 141 N.W.2d 600, 607 (1966); Iowa R.Civ.P. 196. We find no error.

■ IV. *Contribution.* Finally, the City claims the trial court erred in awarding contribution to Jones. It argues that although both Jones and SMB were involved in the settlement with Wadle, only Jones claimed contribution; and since Jones did not prove what portion of the settlement he paid, the trial court should have granted its motion to dismiss Jones's cross-petition for contribution. We conclude that the trial court correctly awarded contribution.

"When a person is vicariously liable, that person and the tortfeasor whose negligence is imputed to him are considered together for contribution purposes." *Schnebly I*, 217 N.W.2d at 731, and authorities cited therein. Contribution is thus initially apportioned among active tortfeasors, in this case the City and Jones. SMB would thus be a co-owner or tenant in common with Jones regarding Jones's right of contribution. Although the general common-law rule holds tenants in common to be indispensable parties who must join as parties plaintiff in personal actions concerning the common property, *Buss v. Prudential Insurance Co. of America*, 126 F.2d 960, 967 (8th Cir. 1942); 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 113 (1965), in many jurisdictions a co-owner may recover the entire common property as against a stranger, the recovery being subject to or for the benefit of the other cotenants. 86 C.J.S. *Tenancy in Common* § 138(b) (1954). We believe the latter view to be the better one with respect to a right of contribution. Accordingly, we hold that an active tortfeasor who is the co-owner of a right of contribution with a passive tortfeasor may recover the entire amount of contribution owed to the co-owners by a third-party tortfeasor without joining the passive co-owner as a party. Recovery by the active tortfeasor extinguishes any liability of the third party to the passive tortfeasor concerning such contribution. If necessary, the passive tortfeasor may then proceed against the active tortfeasor to recover his or her rightful share of the contribution award.

We find no merit in any of the parties' assignments of error. Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.