Donald KELLAR, Plaintiff-Appellee,

v.

PEOPLES NATURAL GAS CO., A DIVISION OF INTERNORTH, INC., Defendant-Appellant.

PEOPLES NATURAL GAS CO., A DIVISION OF INTERNORTH, INC., Cross-Petitioner-Appellant,

v.

David MITCHELL, Defendant to Cross-Petition.

No. 83–1055.

Court of Appeals of Iowa.

May 22, 1984.

Eugene Davis and Paul E. Horvath of Davis, Grace, Harvey, Horvath, Gonnerman & Rouwenhorst, Des Moines, for defendant-appellant.

Kenneth W. Biermacher and A. Roger Witke of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for plaintiff-appellee.

Heard by DONIELSON, P.J., and SNELL and SCHLEGEL, JJ., but considered en banc.

DONIELSON, Judge.

Defendant gas company appeals from adverse judgment in this action to recover compensatory and punitive damages for

loss of plaintiff's truck. Defendant challenges a ruling permitting plaintiff to amend his petition, an instruction listing specifications of negligence, an instruction permitting the jury to award punitive damages, the denial of its cross-petition for indemnity or contribution, and various evidentiary rulings. We affirm in part, reverse in part, and remand.

David Mitchell borrowed a truck owned by his father-in-law, plaintiff Donald Kellar, in order to move some furniture in July of 1980. While maneuvering the truck through a back yard, Mitchell struck a riser for a natural gasline operated by defendant Peoples Natural Gas Co. The riser extended approximately two feet above ground and was allegedly obscured by tall weeds. Leaking natural gas ignited, and the truck was destroyed by fire.

Kellar sued defendant for the loss of his truck, alleging negligence and recklessness in locating and maintaining the riser, in failing to disconnect the riser properly after the customer had discontinued service, and in failing to provide warning signs or barricades to protect the public from the riser. Additional theories of strict liability and res ipsa loquitur were later dismissed by the trial court. Defendant filed a cross-petition against Mitchell, alleging that Mitchell's negligent driving had caused the accident and asking indemnity or contribution from Mitchell in the event Kellar was awarded a judgment against defendant. Mitchell then filed a counterclaim against defendant for loss of his furniture which was in the truck.

Plaintiff's case was tried to a jury while defendant's cross-petition was tried to the court. The jury awarded plaintiff $10,502 in actual damages and $10,000 in punitive damages. The court denied defendant indemnity or contribution from Mitchell and awarded Mitchell $360 on his counterclaim. Defendant has appealed from these awards.

## I.

Defendant first contends the trial court erred by permitting Kellar to amend his petition on the morning that trial began to add additional specifications of negligence. Kellar's petition, filed April 21, 1981, originally contained seven specifications of negligence on defendant's part:

a. Failure to exercise reasonable care in the maintenance of the gasline;

b. Failure to warn of the existence of the gasoline exposed above the ground;

c. Failure to protect the public and this Plaintiff from a hazardous instrumentality;

d. Placement of a gasline at an unsafe height above the ground without adequate protections therefor;

e. Failure to properly disconnect the gasline from a unit it had previously served;

f. Failure to observe various safety codes and regulations with respect to the placement of and maintenance of natural gaslines;

g. Failure to check the gasline connection upon disconnect so as to avoid ignition thereof.

On February 22, 1983, the day before trial, Kellar made application to the court to amend his petition by adding the following specifications of negligence:

h. Failure to maintain the area in which the line or riser was located so as to make safe and protect the property of others when said land and right-of-way was being put to a foreseeable use in the proximity of said line or riser;

i. Failure to exercise reasonable care in the location, installation, construction, maintenance, inspection, and repair of the line or riser and surrounding area, said care being that needed to commensurate with the dangerous potentialities associated with natural gas;

j. Failure to keep the alley and surrounding right-of-way reasonably safe and free from danger;

k. Failure to inspect and/or maintain the line or riser and surrounding

area and keep free from debris, weeds, overgrowth, or other obstruction;

l. Failure to mark, warn or inform others of the existence or presence of the line or riser;

m. Failure to avoid creating potential for danger from collision with the line or riser by a vehicle;

n. Failure to require and/or carry out changes in the location and/or design of the line or riser so as to avoid creating a dangerous condition;

o. Failure to locate the line or riser so as to not interfere with the use of the alley.

After a hearing on the morning of trial, the court allowed the amendments.

Defendant alleges that the new specifications of negligence constitute "a new approach, a new direction to the lawsuit," and therefore should not have been allowed at that late date. The trial court has considerable discretion in determining whether to allow amendment of pleadings, and we will interfere with that decision only upon a clear showing that the court abused its discretion. *Moser v. Brown,* 249 N.W.2d 612, 615 (Iowa 1977); *see* Iowa R.Civ.P. 88. Amendments are the rule and not the exception, but they should not be allowed after a responsive pleading has been filed if they substantially change the issues. *Ackerman v. Lauver,* 242 N.W.2d 342, 345 (Iowa 1976).

We do not believe the trial court abused its discretion in allowing the amendments. Kellar did not seek to introduce any new theories of recovery, having already urged strict liability and res ipsa loquitur in addition to negligence as grounds for recovery. Rather, the amendments appear to do little more than amplify Kellar's seven original negligence allegations. In any event, we believe the record sustains the trial court's conclusion that, due to discovery proceedings which had already taken place, defendant had adequate notice of the nature of the additional claims of negligence to justify granting Kellar's application to amend. In fact, defendant's attorney himself stated that he felt "prepared to address the implicit duties that are suggested by these allegations of negligence." This issue presents no ground for reversal.

## II.

Defendant next claims that the trial court erred in submitting Instruction No. 13 to the jury. This instruction contained all of the allegations of negligence contained in Kellar's original and amended petitions as set forth above except for specifications (e) and (g) relating to disconnecting the gasline. Defendant contends that this instruction contained overlapping and repetitive specifications of negligence which confused the jury and unduly emphasized Kellar's theories of negligence. With one exception, however, this argument was not raised below. We do not consider on appeal objections to jury instructions which were not presented to the trial court. *Franken v. City of Sioux Center,* 272 N.W.2d 422, 426 (Iowa 1978).

Defendant did preserve error on this issue with respect to his claim that subparagraphs 2 and 10 of Instruction No. 13 were repetitive. Subparagraph 2 contained Kellar's allegation that defendant was negligent in failing "to warn of the existence of the gas line or riser exposed above the ground," while subparagraph 10 referred to defendant's "failure to mark, warn or inform others of the existence or presence of the line or riser." The similarity between these two subparagraphs cannot be denied, but we do not believe that they so unduly emphasize Kellar's theory of negligence that reversible · error has been committed. *See Clarke v. Hubbell,* 249 Iowa 306, 316, 86 N.W.2d 905, 911 (1957).

Defendant's brief also contains the following rather enigmatic statement without any supporting argument: "Without embellishing the point, we submit that there is no authority for the submission of subparagraphs 5, 6, 8, 9, and 11 of Instruction No. 13." Such embellishment would

have been helpful, for it is unclear if defendant means there is no factual support in the record to warrant their submission or that there is no legal basis therefor. In any event, we do not consider such an "argument" which here consists of nothing more than a bald assertion without any elaboration. *Stewart v. Hilton*, 247 Iowa 988, 996, 77 N.W.2d 637, 642 (1956); 5 C.J.S. *Appeal & Error* § 1324(1), pp. 326–27 (1958).

### III.

Defendant also asserts that the trial court erred by instructing the jury that it could award punitive damages. He contends there was no evidence of recklessness, wantonness, or gross negligence which would support an award of punitive damages. We agree.

■ We first dispose of Kellar's argument that error was not preserved on this issue. At the close of the evidence, defendant's attorney objected to various proposed jury instructions and stated in part: "the first objection is to the Instruction 9 (sic) with respect to gross negligence. I don't believe there is any evidence whatsoever—to carry this case under the jury's issue ...." It is obvious that defendant's attorney misspoke in referring to Instruction 9 since Instruction 20 is the only one referring to Kellar's claim for punitive damages and the need to show gross negligence. Although the objection could have been stated more clearly and completely, the record indicates that the trial court was fully cognizant of defendant's contention that there was insufficient evidence to justify the submission of the punitive damages issue to the jury and therefore had the opportunity to correct the alleged error. *Pose v. Roosevelt Hotel Co.*, 208 N.W.2d 19, 25 (Iowa 1973).

■ Punitive damages are allowable upon "an adequate showing of wrongful or illegal conduct committed or continued with the willful or reckless disregard of plaintiffs' rights." *Earl v. Clark*, 219 N.W.2d 487, 491 (Iowa 1974). The supreme court has made it clear that there is a difference in degree between "mere" negligence such as would justify general damages and recklessness or willfulness that could lead to punitive damages. The concept of recklessness was discussed in *Vipond v. Jergensen*, 260 Iowa 646, 650, 148 N.W.2d 598, 600–01 (1967):

It means, proceeding with no care coupled with disregard for consequences. The acts must manifest a heedless disregard for or indifference to the rights of others in the face of apparent danger or be so obvious the operator should be cognizant of it, especially when the consequences of such actions are such that an injury is a probability rather than a possibility. Recklessness may include willfulness or wantonness, but if the conduct is more than negligence it may be reckless without being willful and wanton. *We have required evidence of a persistent course of conduct to show no care with disregard for consequences. If it were not so required, we would be allowing an inference of recklessness from every negligent act.* (emphasis added)

The factual circumstances of this case could lead the jury to believe that defendant was negligent in not protecting against the possible hazard presented by the gas riser. We do not believe, however, that defendant's omissions with respect to this one riser can be deemed "a persistent course of conduct ... with disregard for consequences" that could lead to a finding of recklessness and consequent liability for punitive damages. Because there was insufficient evidence to justify instructing the jury on punitive damages, the trial court erred in doing so. We therefore reverse the $10,000 punitive damages award in Kellar's favor.

### IV.

■ Defendant further contends that the trial court erred in denying its cross-petition for indemnity or contribution from David Mitchell. Defendant argues that even assuming it was negligent (which it denies), its negligence was only secondary

or passive while Mitchell had committed primary or active negligence. The trial court concluded that Mitchell was negligent in that he should have seen the riser before running into it, but denied defendant's claim for indemnity or contribution from Mitchell because its negligence, as determined by the jury, warranted punitive damages while Mitchell's, as later determined by the court, did not. Defendant's argument is premised on its claim that the jury should not have been allowed to consider the punitive damages issue. Because we concluded in division III that submission of that issue was error, we must reverse the court's denial of defendant's claim for indemnity or contribution against Mitchell and remand so that the court can determine whether defendant is entitled to indemnity or contribution.

### V.

Defendant claims the trial court erred in several evidentiary rulings. It first complains that there was not a proper foundation for a fire chief's expert testimony that the riser was hazardous. Defendant also asserts that error occurred in the admission of a map of the accident scene which was allegedly incomplete and not drawn to scale, in the admission of a copy of an allegedly irrelevant federal regulation, and in the trial court's refusal to let the jury view the accident scene. We find no error.

First, the testimony of Gene Cook, the city fire chief, was elicited for the purpose of stating his belief as to whether the riser in this case posed a fire hazard and not as to the proper location of risers in general. The trial court did not abuse its discretion in determining that Cook was competent to testify regarding the possible existence of such a fire hazard. *Wadle v. Jones*, 312 N.W.2d 510, 515 (Iowa 1981).

Nor was there error in the court's admission of a 1931 block card depicting the alley and gasline in question. Defendant does not contest that the card accurately indicated the location of the gas main and service line, and that that location

had not been changed during the intervening years. It was only to demonstrate those facts that this exhibit was admitted. Defendant's primary objection, i.e., the diagram was not drawn to scale, was clearly indicated on the card itself and was also brought out in testimony. Defendant was not prejudiced by this evidence, and the court was well within its discretion in admitting it as relevant in showing the location of the main gasline. *See State v. Fuhrmann*, 257 N.W.2d 619, 625 (Iowa 1977). The court was also within its discretion in overruling defendant's request for a jury view of the accident site since, in the court's words, "... the trip to the site to view the premises would not substantially enhance the jury's ability to understand and apply the evidence." *Humphrey v. Happy*, 169 N.W.2d 565, 569–70 (Iowa 1969).

Finally, we agree with Kellar that the court did not commit reversible error in admitting into evidence a federal regulation concerning the prevention of accidental gasline ignition. Defendant claims it was improper to allow the jury to speculate as to the meaning or interpretation of this regulation. Initially, we note that defendant's failure to cite any authorities in support of this argument may be deemed waiver of the issue. Iowa R.App.P. 14(a)(3). Even if we consider the merits, we believe defendant's fears are groundless. The jury was not called on to give a legal interpretation of the regulation; rather, the evidence was introduced merely to show the jury what defendant's own witness testified should have been taken into consideration in guarding against fire hazards in and around defendant's gaslines.

Defendant also claims the regulation was erroneously admitted because its "proper interpretation ... clearly establishes that it had nothing to do with any fact or issue presented in the case at bar." This issue was not raised below; we therefore do not consider it here. *See Dickman*

*v. Truck Transport, Inc.*, 224 N.W.2d 459, 465 (Iowa 1974).

Plaintiff's punitive damages award is reversed. The case is remanded for the limited purpose of determining whether defendant is entitled to indemnity or contribution from Mitchell. In all other respects, the judgment is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Judges concur, except SNELL and SCHLEGEL, JJ., who dissent.

SNELL, Judge (dissenting).

I respectfully dissent from the majority's conclusion in Division III that the trial court erred by submitting the issue of punitive damages to the jury. I also dissent from the finding of error in Division IV and would hold that the trial court correctly denied the defendant's cross-petition for indemnity or contribution from defendant David Mitchell. The trial court should be affirmed on all issues.

Regarding the punitive damage issue, error was not preserved. Even if an adequate objection had been made, it would have been proper to overrule. Defendant's complete objection to the proposed instruction was:

It might be a little bit out of order, but the first objection is to the instruction 9 with respect to gross negligence. I don't believe there is any evidence whatsoever to establish—to carry this case under the jury's issue, I would disregard for the safety of others.

The instruction on exemplary damages is number 20, not number 9. It directs the jury to consider whether defendant was wanton, reckless or grossly negligent. Defendant's objection directed the court's attention to instruction number 9, respecting the words "gross negligence," and did not mention either exemplary or punitive damages. Following this is a cloudy statement on lack of evidence which ends with an obscure and irrelevant comment on disregarding the words, "for the safety of others." I believe a trial court is entitled to more specificity than this in being given notice of the exception counsel is making. *See Franken v. City of Sioux Center*, 272 N.W.2d 422, 426 (Iowa 1978); *Pose v. Roosevelt Hotel Co.*, 208 N.W.2d 19, 25 (Iowa 1973); Iowa R.Civ.P. 196 (1981).

The majority holds as a matter of law that there is no issue of punitive damages. This issue must be judged in the light most favorable to submission. *See Gunnison v. Torrey*, 216 N.W.2d 361, 364 (Iowa 1974). Evidence was presented that defendant gas company did not cut weeds that grew up around the riser when it was not located on company-owned property, nor did it alert the property owner to this fact. The riser was painted gray and was not marked by a barricade or warning sign. The installation site was located by the installer hired by the gas company. Some evidence was presented that the company's own "Operations Manual" was not followed in its location of the riser and safety procedures to be followed. After the mobile home which it serviced was removed, the riser was neither taken away nor was the gas cut off. The evidence was sufficient to present a jury question as to whether the gas company was indifferent to the rights of others or otherwise reckless so that the assessment of punitive damages was legally possible. The Iowa Supreme Court has stated:

exemplary damages may be awarded where defendant acts maliciously, but malice may be inferred where defendant's act is illegal or improper; where the nature of the illegal act is such as to negative any inference of feeling toward the person injured, and is in fact consistent with a complete indifference on the part of defendant, liability for exemplary damages is not based upon the maliciousness of the defendant but is based, rather, upon the separate substantive principle that illegal or improper acts ought to be deterred by the exaction from the defendant of sums over and above the actual damage he has caused.

*Syester v. Banta,* 257 Iowa 613, 628–29, 133 N.W.2d 666, 676 (1965) (citation omitted).

On the question of indemnity, the trial court concluded that although Mitchell was negligent, the gas company was not entitled to indemnity or contribution because the jury found its culpability such as to warrant punitive damages. I believe the evidence supports this finding. "[T]he principle of equity on which the right of contribution is founded can apply only in cases where the situations of the parties are equal, for equality among persons whose situations are not equal is not equitable." 18 C.J.S. *Contribution* § 3 (1939).

SCHLEGEL, J., joins this dissent.