Randall C. GLIDDEN, Appellee,

v.

Mark E. GERMAN d/b/a Mark's Super Corner, Appellant.

Linda STEVENS and Ross Allen Wilson, A Minor, By His Next Friend, Linda Stevens, Appellees,

v.

Mark E. GERMAN d/b/a Mark's Super Corner, Appellant.

No. 84–208.

Supreme Court of Iowa.

Dec. 19, 1984.

Gregory G. Barntsen and Philip Willson of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellant.

Michael J. Winter of Michael J. Winter, P.C., Council Bluffs, for appellees.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, CARTER, and WOLLE, JJ.

WOLLE, Justice.

This appeal raises the question whether the pro tanto credit rule we have previously recognized is affected by our adoption of comparative negligence. We hold that it is not. The trial court should have applied our pro tanto rule rather than a pro rata rule in determining the amount to be credited against each plaintiff's judgment by reason of the settlement each made with third-party tortfeasors. We therefore reverse.

The facts pertinent to this appeal have been stipulated by the parties. A vehicle driven by one Goc became disabled on the approach to a viaduct in Council Bluffs. Council Bluffs police officers subsequently ordered Goc to move his car from the roadway, and plaintiffs Randall C. Glidden (Glidden) and Ross Allen Wilson (Wilson), who were pedestrians, undertook to push the vehicle ahead. Before they completed their task, defendant Mark E. German's vehicle struck the Goc vehicle from the rear, injuring Glidden and Wilson.

Before these actions were commenced Glidden and Wilson attempted to settle their claims against the several targeted tortfeasors: defendant German, whose car struck them; Goc, whose car precipitated the incident; and the city, whose officers were directing traffic. The city and Goc separately settled with Glidden and Wilson for the following amounts:

| | To Glidden | To Wilson |
|---|---|---|
| Paid by Goc | 13,500 | 13,000 |
| Paid by City | 8,500 | 8,000 |
| | 22,000 | 21,000 |

In return, plaintiffs gave the city and Goc signed covenants not to sue which provided that plaintiffs would hold the settling parties harmless from any indemnity or contribution claims that might be asserted against the settling parties.

When Glidden and Wilson were unable to achieve settlement with German, they brought these separate actions against him, and the two cases were consolidated for trial. (In addition, Wilson's mother Linda Stevens presented a separate claim for medical expenses and parental loss of consortium, but the parties have no quarrel about the judgment entered by the trial court on that matter.) At defendant's request, the trial court had the jury decide by special verdicts not only each plaintiff's damages and the percentage of fault of each party but also the percentage of fault

attributable to Goc and the city. The jury's damage verdicts and allocation of fault were as follows:

| Glidden case (Damages—$40,000) | | Wilson case (Damages—$10,000) | |
|---|---|---|---|
| | % fault | | % fault |
| Plaintiff Glidden | 5 | Plaintiff Wilson | 5 |
| Defendant German | 50 | Defendant German | 50 |
| Goc | 20 | Goc | 20 |
| City | 25 | City | 25 |

The single issue we address in this appeal arose when the trial court entered judgment based on the jury's special verdicts. The trial court refused German's request that it apply the pro tanto rule which would have credited the entire settlement amount received by each plaintiff against each damage verdict. Instead, the trial court applied a pro rata rule which reduced considerably the amount of credit received by German for the Goc and city settlement payments. The difference between the judgments for Glidden and Wilson which the trial court based on a pro rata rule, and judgments which would have been entered had the trial court applied a pro tanto rule, can readily be charted:

| Glidden case | | |
|---|---|---|
| | Pro Rata | Pro Tanto |
| Verdict | 40,000 | 40,000 |
| less plaintiff's 5% fault | 2,000 | 2,000 |
| | 38,000 | 38,000 |
| less credit—Goc and city payments combined 45% fault ($22,000 paid) | 18,000 | 22,000 |
| Judgment against German | 20,000 | 16,000 |

| Wilson case | | |
|---|---|---|
| | Pro Rata | Pro Tanto |
| Verdict | 10,000 | 10,000 |
| less plaintiff's 5% fault | 500 | 500 |
| | 9,500 | 9,500 |
| less credit—Goc and city payments combined 45% fault (21,000 paid) | 4,500 | 21,000 |
| Judgment against German | 5,000 | None |

Under the trial court's pro rata theory only $18,000 was credited against Glidden's recovery from German, and $4,500 against Wilson's recovery, because those credits represented the settling tortfeasors' combined 45% pro rata share of each verdict. Had the trial court applied our pro tanto rule, the entire $22,000 received in settle-

ment by Glidden, and the $21,000 received by Wilson, would have been credited against the verdicts on a dollar-for-dollar basis. *Greiner v. Hicks*, 231 Iowa 141, 146–47, 300 N.W. 727, 731 (1941). *Accord Wadle v. Jones*, 312 N.W.2d 510, 512 (Iowa 1981).

German's appeal presents purely a question of law—whether we should depart from our pro tanto credit rule governing settlement amounts received by plaintiffs in those cases controlled by the comparative negligence principles of *Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1983). In support of the trial court's decision to switch from a pro tanto to a pro rata approach, plaintiffs contend that the pro tanto rule is not compatible with comparative negligence because it does not fairly apportion a plaintiff's damages among several tortfeasors. They note that our legislature has recently enacted a statute embodying the pro rata principle and urge us to follow that lead. Finally, they suggest that the pro rata rule is more likely to encourage settlement of multi-defendant litigation.

I. To determine whether our pro tanto rule is compatible with comparative negligence, we must reexamine the reasons why we adopted that rule as well as the policy factors that led to our landmark *Goetzman* decision.

Our court initially adopted the pro tanto rule in *Greiner v. Hicks*, a case in which one tortfeasor paid the plaintiff $2,750 for a covenant not to sue and a second tortfeasor, the defendant Hicks, contended he was entitled to a full dollar-for-dollar credit against any recovery the plaintiff might receive. We followed "the decided weight of authority" in holding that "whatever consideration is received from a joint tortfeasor for a covenant not to sue reduces pro tanto the recovery against the other wrongdoers." *Id.* 231 Iowa at 146, 300 N.W. at 731. We made clear the public policy undergirding that decision:

The theory underlying these decisions is that while a party is entitled to full com-

pensation for his injuries, there can be only one satisfaction therefor.

*Id.* at 146–47, 300 N.W. at 731.

The *Greiner* pro tanto rule was revisited and reaffirmed in *Wadle v. Jones*, 312 N.W.2d at 512–14. In *Wadle* the plaintiff received $45,000 in settlement from two tortfeasors and subsequently obtained a judgment against a third for $45,125.59. When the trial court followed *Greiner* and entered judgment for only $125.59, the plaintiff Wadle (like plaintiffs Glidden and Wilson here) urged us to abandon our pro tanto rule in favor of a pro rata rule. The plaintiff complained that the nonsettling defendant had received a windfall from the partial settlement and should instead be required to pay his full proportionate share of the damages as was the rule in at least one other jurisdiction. 312 N.W.2d at 512–13. In confirming our preference for the pro tanto approach, we first repeated what Greiner had said about the purpose of the pro tanto rule, quoted above. We then expressed our disapproval of the pro rata rule by adding:

> Adoption of the pro rata credit rule would allow a claimant who has made a settlement that exceeds the settling tortfeasor's pro rata share of the verdict to recover more than full compensation for personal injuries.

312 N.W.2d at 513. We also noted that the plaintiff Wadle could hardly complain about application of the pro tanto credit rule when she had reason to know of its existence when she negotiated a settlement agreement which later proved to be very favorable to the plaintiff, if not to the settling tortfeasors.

In essence, both *Greiner* and *Wadle* turned on our expressed concern that persons not be permitted to receive more than a full 100% damage recovery for a single injury, even when the excess resulted from a favorable settlement with fewer than all the tortfeasors. Since *Wadle,* we have adhered to this pro tanto rule while refining its applicability to differing fact patterns. *See, e.g., Knauss v. City of Des Moines,* 357 N.W.2d 573, 578 (Iowa 1984) (party

seeking pro tanto credit must bear burden of showing right to credit); *Jones v. City of Des Moines,* 355 N.W.2d 49, 52 (Iowa 1984) (pro tanto settlement credit to be allocated to two verdicts in same proportion as amounts of verdicts).

■ Plaintiffs contend that our pro tanto rule cannot be squared with our adoption of pure comparative negligence in *Goetzman v. Wichern,* but we find no conflict between the holding and rationale of *Goetzman* and the basic policy against excessive recovery of damages for a single injury that underlies the pro tanto concept.

■ The holding of *Goetzman* was clear and specific. We supplanted contributory negligence with a pure form of comparative negligence in cases where contributory negligence had formerly been a complete defense. 327 N.W.2d at 754. That holding delineated a new tort doctrine for a specific category of cases and displaced a single doctrine, that of contributory negligence. *Thompson v. Stearns Chemical Corp.,* 345 N.W.2d 131, 133 (Iowa 1984); *Rozevink v. Faris,* 342 N.W.2d 845, 849 (Iowa 1983). It did not require a new and different division of a plaintiff's damage recovery among defendants, as plaintiffs here suggest. *Goetzman* was a landmark decision, but it did not mandate a wholesale revision of Iowa tort law. *See, e.g., Thompson v. Stearns Chemical Corp.,* 345 N.W.2d at 133–34 (adoption of comparative negligence did not affect rule denying contribution from employer liable for worker's compensation); *Rozevink v. Faris,* 342 N.W.2d at 849–50 (adoption of comparative negligence did not abrogate doctrine of joint and several liability).

■ It is noteworthy that our pro tanto credit rule had nothing to do with the doctrine of contributory negligence which *Goetzman* eliminated. For the pro tanto rule to come into play a plaintiff must first receive a verdict against which a defendant seeks a credit for settlement funds paid to the plaintiff. Before *Goetzman* a contributorily negligent plaintiff was barred from recovering any verdict for damages. Con-

sequently, *Goetzman* had no direct effect on those cases in which our pro tanto credit rule had previously been applied.

 Moreover, in analyzing the manner in which a plaintiff's damages should fairly be apportioned among several tortfeasors, it is instructive to compare our pro tanto credit rule with the doctrine of joint and several liability which we recently retained as being compatible with pure comparative negligence. *Rozevink v. Faris,* 342 N.W.2d at 848–50. We decided that under our doctrine of comparative negligence the injury a plaintiff sustains need not be divided among the several tortfeasors, whether they be a plaintiff and defendant or several defendants. Under the doctrine of comparative negligence the negligent plaintiff's recovery for the injury is reduced proportionately to the negligence. Because of joint and several liability, all tortfeasors who cause a plaintiff's harm are jointly liable for the total proportionately reduced amount. The plaintiff cannot recover more than is fair, but the plaintiff is allowed to collect the fair amount of a verdict from all tortfeasors. 342 N.W.2d at 850.

 Our pro tanto rule satisfies these same objectives. The plaintiff may by settlement recover part of a full and fair recovery from one tortfeasor and the balance from all others, but the plaintiff cannot recover more than full and fair compensation from all tortfeasors combined. Only under the pro rata rule which plaintiffs espouse can a plaintiff recover more than the fair compensation fixed by a jury verdict or judge's determination of damages. We prefer the rule that does not permit that result and therefore choose not to adopt a pro rata approach.

II. We recognize that the Iowa legislature has included in its recently-enacted comparative fault statute a provision for *pro rata* credit, which provides in pertinent part:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, as determined in section 668.3, subsection 4.

1984 Iowa Legis.Serv. No. 7, 11 (West) (to be codified as Iowa Code § 668.7). The referenced section 668.3(4) of the new act provides:

> The court shall determine the amount of damages payable to each claimant by each other party, if any, in accordance with the findings of the court or jury.

*Id.* at 9.

 None of the provisions of Iowa's comparative fault act, including its quoted provision modifying our pro tanto rule, apply to this case, because the legislature expressly provided otherwise. Section 15 of the act provides:

> This Act, except for section 4 [modifying the doctrine of joint and several liability], applies to all cases filed on or after July 1, 1984. Section 4 of this Act applies to all cases tried on or after July 1, 1984.

*Id.* at 13. This case was both filed and tried before July 1, 1984, so the modified rule governing credit for settlement is not here controlling.

Plaintiffs, however, urge us to ignore the express effective date and abrogate our pro tanto rule now on the theory that the statute expresses an important determination of public policy which is contrary to our present rule. We choose not to implement this new rule until its appointed time has arrived. To do so would clearly violate two cardinal rules of statutory construction. Iowa Code section 4.5 (1983) provides:

> A statute is presumed to be prospective in its operation unless expressly made retrospective.

Moreover, Iowa Rule of Appellate Procedure 14(f)(13) provides:

In construing statutes the court searches for the legislative intent as shown by what the legislature said, rather than what it should or might have said.

Had the legislature intended the comparative fault act to apply to all cases *pending* on or after July 1, 1984, it would not have used the words "filed" and "tried" in fixing its effective dates.

■ We decline to adopt this one part of the comparative fault act prematurely for another reason. The quoted statutory provision which will provide for credit against a judgment by "the amount of the released person's equitable share of the obligation" does not stand alone; it is just one of the comparative fault act's package of significant changes in Iowa tort law. These changes should be read and applied together, not interpreted as isolated principles reflecting separate expressions of public policy. No other new tort principle embodied in the comparative fault act applied to this case, and neither should its modification of our pro tanto credit rule.

We are aware that the pro tanto rule has been modified in some other states whose comparative negligence systems differ considerably from ours. The reasons those states have modified their rules relate more to the varying ways the laws of those states apportion fault than to any basic defect in the pro tanto rule. *See, e.g., Shantz v. Richview, Inc.,* 311 N.W.2d 155, 156 (Minn.1981) (affirming that non-settling defendant only liable for percentage share of total damages under Minnesota statute); *Bartels v. City of Williston,* 276 N.W.2d 113, 121 (N.D.1979) (noting that statute authorizing pro rata reduction of a non-settling defendant's judgment impliedly repealed the existing statutory pro tanto rule); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 430–31 (Tex.1984) (one-recovery rule modified to comport with statute apportioning liability). Plaintiffs have not pointed to a single jurisdiction which adopted a pure system of comparative negligence by judicial decision and then felt compelled to replace a pro tanto credit rule with a pro rata rule. That is the backdrop for our decision in this case. On the other hand, several states that have adopted comparative negligence by judicial decision still apply a pro tanto credit rule. *See, e.g., Continental Insurance Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 295 (Alaska 1980) (by statute); *Mayhew v. Berrien County Road Commission,* 414 Mich. 399, 410, 326 N.W.2d 366, 370–71 (1982) (by statute); *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879, 886–87 (1979) (by judicial decision). In *Wadle v. Jones,* we pointed out that our pro tanto rule was consistent with section 885(3) of the Restatement (Second) of Torts (1979), which provides for diminution of a recovery "to the extent of the payment made ... whether or not it is so agreed ...." 312 N.W.2d at 514; *see Jones v. City of Des Moines,* 355 N.W.2d 49, 52 (Iowa 1984). We still favor and retain that Restatement rule in cases not governed by Iowa's new comparative fault act.

III. Plaintiffs also contend that the pro rata rule provides a more favorable seedbed for settlement of lawsuits than does our pro tanto rule. For authority, however, plaintiffs cite only a dissenting opinion in the case of *American Motorcycle Association v. Superior Court of Los Angeles County,* 20 Cal.3d 578, 146 Cal. Rptr. 182, 578 P.2d 899 (1978). There the dissenting justice argued that a pro tanto approach permits a plaintiff to settle too cheaply with one tortfeasor, then by verdict against the others require them to pay more than their fair share. *Id.* at 609–11, 146 Cal.Rptr. at 202–03, 578 P.2d at 919–20. The result, plaintiffs argue, is that the non-settling defendants may be unfairly disadvantaged by being required to pay too much because of a settlement agreement to which they were not parties.

■ We find the plaintiffs' argument unconvincing. Certainly the plaintiff and settling tortfeasor may often miscalculate in attempting to determine through settlement negotiations what a given tortfeasor's fair share of the damages should be. Settlement involves many intangible

factors, not the least of which are the parties' predictions (usually at best rough estimates) concerning what damages a judge or jury might award and who will be found liable. In any event, if one tortfeasor settles for much more than a fair proportionate share of the damages, or much less, those who have ultimately paid more of a verdict than was fair and equitable are not without a remedy. We permit actions for equitable contribution so the total amount of a judgment may be divided equally among those liable to the injured person. *See Schnebly v. Baker,* 217 N.W.2d 708, 731–32 (Iowa 1974) (explaining rules for apportioning contribution among defendants); *Best v. Yerkes,* 247 Iowa 800, 805–10, 77 N.W.2d 23, 26–29 (1956) (recognizing right in Iowa to equitable contribution among joint tortfeasors). For example, in *Wadle v. Jones* the settling defendant who paid more than a fair share of the plaintiff's damages received a judgment for contribution against the non-settling defendant in the amount of fifty percent of the damage award. 312 N.W.2d at 512, 516.

Finally, plaintiffs contend that the pro tanto rule generates unnecessary third-party claims for indemnity and contribution, while a pro rata rule would minimize the frequency of such claims. The plaintiffs, however, have provided inadequate legal or factual support for that contention. They cite no case law and present no empirical data or studies to prove their point. Moreover, we find nothing in this record which suggests that application of our pro tanto rule will generate or complicate any problems with third-party claims that a pro rata rule would avoid. Even though the plaintiffs agreed in their covenants not to sue to hold the city and Goc harmless from any indemnity or contribution claims that might have been asserted against them, German takes the position that the judgments here need not further be reduced by his third-party claims if credit against the judgment is based on our pro tanto rule. We therefore need not address the questions presented in the briefs about whether judgments based on a pro rata approach should have been reduced by German's claims for comparative contribution against the settling tortfeasors.

 Our pro tanto rule remains viable in cases not affected by Iowa's new comparative fault act, notwithstanding the arguments plaintiffs have arrayed against it. The trial court should have credited against each plaintiff's damage verdict the full amount each had received in settlement from Goc and the city. On remand, Glidden's judgment against German should be reduced from $20,000 to $16,000, and judgment should be entered for German and against Wilson, based on the appropriate dollar-for-dollar credits which our *Greiner—Wadle* pro tanto rule required.

REVERSED AND REMANDED WITH DIRECTIONS.