# IN THE COURT OF APPEALS OF IOWA

No. 19-1244
Filed September 1, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KEVIN JERMAINE JEFFERSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Michael J. Schilling, Judge.

A defendant appeals his convictions for robbery in the second degree, possession of methamphetamine, being a felon in possession of a firearm, and theft in the third degree. **AFFIRMED.**

Jeffrey M. Beatty, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Presiding Judge.**

Kevin Jefferson reached a plea agreement with the State on the morning of his trial. He pleaded guilty to possession of methamphetamine with intent to deliver, possession of a firearm by a felon, theft in the third degree, and robbery in the second degree. About one month later, he unsuccessfully moved in arrest of judgment. Jefferson now asks us to reverse the district court's denial of his motion in arrest of judgment and allow him to withdraw his pleas. In support, he asserts: (1) he could not knowingly, voluntarily, and intelligently enter a plea because of his emotional distress and (2) the court violated Iowa Rule of Criminal Procedure 2.8(2)(b) when it conducted the plea hearing in chambers rather than open court.

Neither argument entitles Jefferson to relief. First, the record does not support Jefferson's assertions regarding his emotional state. So we affirm the denial of the motion in arrest of judgment. Second, because Jefferson did not raise the rule violation before the district court, we decline to consider it now.

## I.   Facts and Prior Proceedings

In January 2019, the State initiated two criminal cases against Jefferson, alleging ten counts: robbery in the first degree, willful injury, aggravated-misdemeanor assault, possession of methamphetamine with intent to deliver, possession of marijuana (third offense), possession of ecstasy (third offense), felon in possession of a firearm, carrying weapons, possession of contraband in jail, and theft in the third degree. Three months later, Jefferson's twenty-two-year-old nephew died unexpectedly. Jefferson learned of the death a few days before his case was scheduled for trial.

On April 9, the date set for trial, Jefferson reached a plea agreement with the State. He pleaded guilty to four of the ten original charges, two of which were lesser included offenses. The district court took the plea in-chambers rather than in open court, though a court reporter was present. The court engaged Jefferson in these discussions:

> Q. Are you pleading guilty freely and without duress, threats, or coercion? A. Yes, sir.
> Q. If at any time you do not understand something, please interrupt me. You are free to consult with your attorney outside the presence of the court; do you understand that? A. Yes, sir.
> Q. Also, if at any time you decide you do not want to continue with your pleas of guilty, just tell me, and we will stop. Nothing that has occurred up to this point would be used against you at trial; do you understand that? A. Yes, sir.

The court also gave defense counsel a chance to voice concerns, asking:

> Q. Counsel, do you know any reason why the plea should not be accepted? Mr. Dial? A. No, Your Honor.
> Q. Counsel, is there anything which the court has omitted which could affect the validity of the plea? Mr. Dial? A. No, Your Honor.

Neither Jefferson nor his attorney mentioned the nephew's death during the hearing. The court accepted Jefferson's guilty pleas, finding they were voluntarily entered.

But Jefferson had second thoughts. About two weeks later, he sent a handwritten letter to the court asking to withdraw his guilty pleas. He alleged he was suffering from "severe grief and delirium" triggered by his nephew's death. Defense counsel moved in arrest of judgment on May 8. Jefferson's affidavit attached to the motion explained that "he was very close to his nephew, as he was like a son to me."

The court considered the motion at a hearing on June 17.  At that hearing, Jefferson claimed that during the guilty plea colloquy he was unable to concentrate, "spaced off," and would have made different decisions but for his grief.  Two days later, the court denied Jefferson's motion in arrest of judgment.  The court acknowledged the nephew's death was "unsettling" for Jefferson.  But the court held "the record does not suggest from any source that [Jefferson] was suffering from a mental condition which prevented him from actively participating in the plea proceeding and knowingly, intelligently, and voluntarily waiving his rights."  The court sentenced Jefferson to consecutive terms on the four offenses for a total prison sentence not to exceed twenty-seven years.  He now appeals.

## II.  Scope and Standards of Review

We review guilty-plea proceedings for corrections of errors at law.  *State v. Ortiz*, 789 N.W.2d 761, 764 (Iowa 2010).  We review the denial of a motion in arrest of judgment for an abuse of discretion.  *State v. Myers*, 653 N.W.2d 574, 581 (Iowa 2002).  Reversal is appropriate "only if the ruling was based on reasons that are clearly unreasonable or untenable."  *Id.*

## III. Analysis

### A.  Do we have authority to decide this appeal?

As a threshold matter, we must determine whether we have authority to hear this appeal.  Effective July 1, 2019, the legislature amended Iowa Code section 814.6 to prohibit defendants from appealing a conviction if they entered a guilty plea, unless the conviction was for a class "A" felony or they could show good cause for the appeal.  Iowa Code § 814.6(1)(a)(3) (2019). The revised statute also allows defendants to seek discretionary review from the denial of a motion in

arrest of judgment on grounds other than ineffective assistance of counsel. *See id*. § 814.6(2)(f).

In *State v. Macke*, our supreme court held the new legislation did not apply to a direct appeal filed in May 2018. 933 N.W.2d 226, 231–36 (Iowa 2019). *Macke* endorsed the "long-standing precedent" that "unless the legislature clearly indicates otherwise, 'statutes controlling appeals are those that were in effect at the time the judgment or order appealed from was rendered.'" *Id*. at 231 (citing *James v. State*, 479 N.W.2d 287, 290 (Iowa 1991) (allowing appeal of defendant's application for postconviction relief, which was denied before effective date of law limiting appellate review)).

Jefferson contends he is appealing from the district court's denial of his motion in arrest of judgment, which occurred in June 2019, before the new law went into effect. The trouble is that the court did not enter judgment until July 22, 2019—three weeks after the legislation's effective date. So *Macke* and *James* do not help Jefferson.

In the alternative, Jefferson argues we should find good cause to allow his direct appeal. The State agrees "[i]t is possible that a defendant has good cause to appeal from a guilty plea where he filed a motion in arrest of judgment that was denied prior to July 1, 2019, but he was sentenced after July 1, 2019." The State explains the "catch-22" facing Jefferson:

> Prior to July 1, direct appeal from the final judgment was a defendant's only avenue to seek review of the denial of a motion in arrest of judgment prior to sentencing. *See State v. Farmer*, 234 N.W.2d 89, 90 (Iowa 1975) ("Interlocutory rulings of the court affecting the outcome of the case are reviewable upon appeal from final judgment when error has been properly preserved."). One of the changes made by Senate File 589 permits a defendant to seek

discretionary review of an order denying a motion in arrest of judgment. *See* Iowa Code § 814.6(2)(f) (effective July 1, 2019). But that section does not apply to orders entered prior to July 1. *See Macke*, 933 N.W.2d at 231. An order denying a motion in arrest of judgment entered prior to July 1 is otherwise unreviewable for a defendant who was sentenced after July 1.

We agree with the parties that this situation fits the "good cause" safety valve that the legislature included in section 814.6(1)(a)(3). Jefferson has advanced a legally sufficient reason to pursue an appeal as a matter of right. *Contra State v. Tucker*, 959 N.W.2d 140, 154 (Iowa 2021) (finding Tucker did not show good cause to appeal when the court advised him of the necessity of filing a motion in arrest of judgment to challenge his guilty plea and the consequences of failing to do so, but he waived that right and proceeded to sentencing).

**B. Did the district court abuse its discretion in finding Jefferson's guilty plea was knowing, voluntary, and intelligent?**

We next address Jefferson's claim that his "personal circumstances and mental state" prevented him from entering a knowing, voluntary and intelligent guilty plea. At the hearing on his motion in arrest, Jefferson testified: "my body was there, but my mind wasn't there." Jefferson claimed he would not have accepted the State's plea offer if he had been in a proper state of mind.

But the guilty-plea record belies his claims. The district court engaged in a proper colloquy and received reassurance from Jefferson and his attorney that Jefferson's decision to accept the plea offer was voluntary. Jefferson fails to overcome the presumption that his guilty pleas were knowing, voluntary, and intelligent. *See Arnold v. State*, 540 N.W.2d 243, 246 (Iowa 1995).

Indeed, the record shows Jefferson understood the plea proceedings. The district court reminded Jefferson that he could end the hearing at any time, but Jefferson did not. The court urged Jefferson that he should interrupt the court if he was confused, but Jefferson did not. The court advised Jefferson that he could confer with his attorney if he did not understand the proceedings, but Jefferson did not. And, before accepting the plea, the court asked Jefferson, his attorney, and the prosecutor if there were any reasons the plea should not be accepted. But no one raised any concerns about Jefferson's mental state. Instead the record shows that Jefferson was of sound mind. He answered the court's questions appropriately. He stated he understood his rights, was waiving them, and wanted to plead guilty.

Jefferson's after-the-fact assertions of emotional strife do not meet his burden. *See Myers*, 653 N.W.2d at 581 (holding depression and stress of incarceration was insufficient to overcome a record demonstrating defendant's understanding of proceeding); *State v. Blum*, 560 N.W.2d 7, 9–10 (Iowa 1997) (holding stress of incarceration, pain from a foot injury, and worry about prospects at trial did not make a guilty plea involuntary). The court did not abuse its discretion by denying Jefferson's motion in arrest of judgment.[1]

---

[1] Jefferson also argues his plea colloquy was "deficient and accomplished no more than obtaining conclusory statements." Because Jefferson does not develop this argument, we do not address it. *See Kellar v. Peoples Nat. Gas Co.*, 352 N.W.2d 688, 693 (Iowa Ct. App. 1984) ("We do not consider such an 'argument' which here consists of nothing more than a bald assertion without any elaboration.").

**C. Did Jefferson preserve his claim that the district court violated the open-court requirement in Rule 2.8(2)(b)?**

Finally, we turn to Jefferson's argument that the district court violated the rules of criminal procedure by conducting the plea colloquy in chambers. *See* Iowa R. Crim. P. 2.8(2)(b) ("Before accepting a plea of guilty, the court must address the defendant personally in open court . . . ."). He insists that for felony pleas, courts must strictly adhere to the rule's procedural safeguards. *See State v. Moore*, 638 N.W.2d 735, 738–39 (Iowa 2002) ("Literal compliance, by personally addressing the defendant on the record, establishing a factual basis for the plea, its voluntariness, and the defendant's understanding of the required matters, is well scripted in rule [2.8(2)(b)].").

Jefferson raises an interesting argument on appeal about the "open court" requirement in rule 2.8(2)(b). *See generally Belcher v. State*, 801 S.W.2d 372, 375 (Mo. Ct. App. 1990) (holding guilty plea proceedings in chambers satisfied "open court" requirement and collecting cases). But we cannot reach it because he did not preserve it in his motion in arrest of judgment.

To preserve error for appeal, defendants challenging a guilty plea must file a motion in arrest of judgment. Iowa R. Crim. P. 2.24(3)(a). Although Jefferson did move in arrest of judgment, that motion only challenged the adequacy of the guilty plea proceeding in relation to his grief-stricken state. Jefferson never challenged the *setting* of the plea hearing.[2] Indeed, during the hearing on the motion, the court sought to clarify Jefferson's challenge, asking "I need to make

---

[2] To the contrary, defense counsel affirmed that Jefferson was not alleging "procedural issues with the guilty plea."

certain that when I rule on his motion that I have covered the grounds asserted."

Despite this request for clarification, Jefferson did not object to holding the proceedings in chambers. Because Jefferson did not present this claim to the district court, we cannot review it now.[3] *See State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002) (holding defendant failed to preserve error by failing to alert district court to contentions at trial).

**AFFIRMED.**

---

[3] Even if we assume Jefferson's motion generally raised the open-court requirement, the district court based its decision on the "sole contention" that the plea was impacted by Jefferson's mental state. To preserve error, Jefferson needed to ask the court to specifically address the open-court issue. *See State v. Krogmann*, 804 N.W.2d 518, 524–26 (Iowa 2011).